IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZACHARY WILLIAM BARE, et al.,           :
                                        :          CIVIL ACTION
                    Plaintiffs,         :
                                        :          NO. 10-4546
            v.                          :
                                        :
KELLY CRUZ, et al.,                     :
                                        :
                    Defendants.         :

## OPINION

**Slomsky, J.**                                              **April 2, 2012**

## I.    INTRODUCTION

Before the Court is Plaintiffs' Motion to Compel Production of Documents Pursuant to Rule 45(c)(2)(B)(i) ("Motion to Compel"). (Doc. No. 37.) This case arises out of an incident involving Defendant State Police Trooper Kelly Cruz and his alleged use of excessive force against Plaintiff Zachary Bare. (Doc. No. 1.) Plaintiff Bare asserts a constitutional claim against Defendant Cruz and also against Defendant Frank E. Pawlowski, Pennsylvania State Police Commissioner, pursuant to 42 U.S.C. § 1983 (Counts I and II). (Id. ¶¶ 29-37.) In addition, Plaintiff Bare and his mother, Kimberly Bare, assert state tort claims against Defendant Cruz (Counts III and IV). (Id. ¶¶ 38-40, 42-44.)

During discovery, a dispute arose over the production of documents by the Pennsylvania State Police ("PSP") in response to a subpoena served by Plaintiffs. Specifically at issue are three documents containing email communications between a PSP Internal Affairs investigator and state prosecutors. Defendant Pawlowski argues that these communications are protected by

attorney-client privilege and should not be disclosed.  On December 18, 2011, Plaintiffs filed the

instant Motion to Compel, arguing that the documents are not privileged and should be made

available to Plaintiffs.  (Doc. No. 37.)  On December 23, 2011, Defendant Pawlowski filed a

Response in Opposition to Plaintiffs' Motion to Compel (Doc. No. 42), and on January 4, 2012, a

hearing was held on the Motion to Compel (Doc. No. 45).

For reasons discussed below, the Court finds that the disputed documents are protected by

attorney-client privilege, and will deny Plaintiffs' Motion to Compel.

## II.    STATEMENT OF FACTS

On August 19, 2009, during a drug investigation conducted by the Pennsylvania State

Police ("PSP"), Defendant Kelly Cruz ("Defendant Cruz") allegedly entered the home of Plaintiff

Kimberly Bare ("Kimberly") and assaulted her son Zachary ("Zachary") (collectively

"Plaintiffs").  (Doc. No. 1 ¶¶ 9, 11.)  The Complaint states that Zachary suffered serious personal

injury when Defendant Cruz "used his boot to stomp [Zachary's] face into a tile floor while [he]

was handcuffed and submissive on the kitchen floor."  (Id. ¶ 9.)  Kimberly was allegedly forced

by officers to watch the assault on her son, causing her severe emotional distress.[1]  (Id. ¶¶ 11-12.)

On September 2, 2009, in accordance with PSP procedure, Zachary reported Defendant

Cruz's conduct by filing a complaint with the PSP Internal Affairs Division.  (Id. ¶ 22.)

Thereafter, on November 23, 2009, Zachary filed with the Chester County District Attorney a

private criminal complaint against Defendant Cruz, pursuant to Rule 506 of the Pennsylvania

---

[1]  According to the Complaint, Kimberly Bare is physically disabled and cannot move
from her chair without assistance.  (Doc. No. 1 ¶ 12.)

Rules of Criminal Procedure.[2]  (Id. ¶ 23.)  Due to a potential conflict of interest, the Chester County District Attorney referred the matter to the Pennsylvania Attorney General for review and investigation.  (Id.)

Thereafter, on September 8, 2010, Plaintiffs commenced the instant civil litigation against Defendant Cruz and Defendant Frank E. Pawlowski, Pennsylvania State Police Commissioner ("Defendant Pawlowski").  (Doc. No. 1.)  As of that date, neither Plaintiffs nor their attorney were aware of the outcome of the PSP internal investigation of the conduct of Cruz on August 19, 2009.  (Id. ¶ 22.)[3]

---

[2]  Rule 506 sets forth the procedure for approval of private complaints.

> (A)  When the affiant is not a law enforcement officer, the [private] complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

> (B) If the attorney for the Commonwealth:
>     (1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;
>     (2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

Pa. R. Crim. P. 506.

[3]  At a status conference held on April 4, 2011, the Court was informed that the Attorney General's criminal investigation into Defendant Cruz's conduct was still pending.  (Status Hr'g Tr. 4-5, Apr. 4, 2011.)  At some point after the conference, the Attorney General denied Zachary's private criminal complaint.  On October 21, 2011, the Honorable James P. MacElree, II, President Judge of the Court of Common Pleas of Chester County, entered an order denying Zachary's petition for review and approval of the private criminal complaint against Defendant Cruz.  (In re Petition of Zachary Bare for Review & Approval of Private Criminal Complaint, No. MD-1833-2011.)

During discovery in this case, Plaintiffs served a Rule 30 Notice of Deposition and a subpoena *duces tecum* on the PSP.[4]  The subpoena requested the production of electronically stored information relating to the August 19, 2009 incident and the subsequent internal affairs investigation of Defendant Cruz.[5]  The PSP produced a number of responsive documents, as well as a privilege log in which counsel identified additional responsive documents purportedly protected by attorney-client privilege.  (Doc. No. 37 ¶ 3.)  The parties have resolved by agreement the majority of the privilege disputes.  (Id.)  However, they have been unable to come to a resolution on three remaining documents.  (Id.)  As a result, Plaintiffs filed the instant Motion to Compel.[6]  During the January 4, 2012 hearing, counsel for Defendant Pawlowski on

---

[4]  The Pennsylvania State Police ("PSP") is not a party to this action.

[5]  The subpoena specifically requested the following records:

> 1.  All records or data (defined to include all e-mail and/or any electronic communication) that mention(s) Zachary Bare or Kim Bare,
>
> 2.  All records or data (defined to include all e-mail and/or any electronic communication) that mention(s) this incident, by IAD control number 2009-0633, and/or the underlying search and seizure on August 19, 2009, in West Whiteland Twp., Chester County, in which the PSP clandestine laboratory team participated, and/or the claims asserted here against defendants Cruz and Pawlosky [sic], or otherwise, and
>
> 3.  All records or data (defined to include all e-mail and/or any electronic communication) that mention(s) Kelly Cruz and Zachary Bare, or Kelly Cruz and Kimberly Bare, or Kelly Cruz and this incident as described in Paragraph 2, above.

(Doc. No. 37 at 8-9.)

[6]  Plaintiffs' Motion to Compel addresses four disputed documents.  (Doc. No. 37.) Counsel for Defendant Pawlowski however, notes that the document dated May 28, 2010, titled

behalf of the PSP turned over the three documents to the Court for *in camera* review.[7]

The three documents at issue consist of communications between PSP Internal Affairs investigator, Lieutenant Kathy Jo Winterbottom ("Lt. Winterbottom") and Attorney John Flannery ("Flannery") of the Attorney General's Office and Chester County District Attorney John Carroll ("Carroll").[8]   (Doc. No. 37 ¶¶ 4-5.)   The documents are described in the privilege log as follows:

> (1) On April 23, 2010, an email from John Flannery to Lieutenant Winterbottom regarding Trooper Kelly Cruz;
>
> (2) On February 17, 2010, an email from John Flannery to Lieutenant Winterbottom regarding Trooper Kelly Cruz; and
>
> (3) On November 10, 2009, an email from John Carroll to Lieutenant Winterbottom regarding Trooper Kelly Cruz.

(Doc. No. 37 ¶ 4.)   In general, these communications relate to whether there was sufficient information to prosecute Defendant Cruz.   (Disc. Hr'g Tr. 57, Jan. 4, 2012; Doc. No. 42 ¶ 9.)

Plaintiffs argue that these documents are not protected from disclosure because there is no attorney-client relationship between the PSP and the Attorney General or the Chester Country District Attorney.   (Doc. No. 37 ¶¶ 8-10.)   Moreover, if an attorney-client relationship did exist, Plaintiffs argue that any applicable privilege was waived when the PSP produced Lt.

---

"Request for Prosecutorial Decision" has been produced.   (Doc. No. 42 at 5-6.)   Thus, the privilege dispute as to this document is moot.

[7]   Defendant Pawlowski produced the three disputed documents, as well as the privilege log.   The privilege log is marked as DP-1.   The three documents are marked as DP-2.   (Disc. Hr'g Tr. 57, Jan. 4, 2012.)

[8]   All three documents are best characterized as email chains, as they are sequential communications of a series of responses to the original message.

Winterbottom's May 28, 2010 communication to Flannery, titled "Request for Prosecutorial

Decision." (Id. ¶ 11.)  In response, Defendant Pawlowski maintains that Lt. Winterbottom

communicated with both Flannery and Carroll for the purpose of obtaining legal advice.  (Doc.

No. 42 at 6-8.)

## III.    LEGAL STANDARD

It is well established that "a nonparty may be compelled to produce documents and

tangible things . . ." pursuant to a proper subpoena.  Fed. R. Civ. P. 34(c).  A nonparty may

object to complying with a subpoena under Rule 45(c)(2)(B).[9]  If a nonparty objects and

withholds subpoenaed information under a claim that it is privileged, the nonparty must:

(1) expressly make the claim of privilege; and (2) describe the nature of the withheld documents,

communications or tangible things in a manner that, without revealing information itself

privileged or protected, will enable the parties to assess the claim.  Fed. R. Civ. P. 45(d)(2)(A).

---

[9]  Rule 45 provides in relevant part that:

> A person commanded to produce documents or tangible things or to
> permit inspection may serve on the party or attorney designated in the
> subpoena a written objection to inspecting, copying, testing or
> sampling any or all of the materials or to inspecting the premises–or
> to producing electronically stored information in the form or forms
> requested.  The objection must be served before the earlier of the time
> specified for compliance or 14 days after the subpoena is served.  If
> an objection is made, the following rules apply:

> (i) At any time, on notice to the commanded person, the serving party
> may move the issuing court for an order compelling production or
> inspection.

*       *       *

Fed. R. Civ. P. 45(c)(2)(B).

The attorney-client privilege protects from disclosure communications between an attorney and a client made in connection with providing or obtaining legal services.  Wise Invs., Inc. v. Bracy Contracting, Inc., No. 01-3458, 2002 WL 31955990, at *1 (E.D. Pa. Oct. 23, 2002). The purpose of this privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  In re Grand Jury Investigation, 445 F.3d 266, 273 (3d Cir. 2006) (citing United States v. Zolin, 491 U.S. 554, 562 (1989)).  The attorney-client privilege applies to:  "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."  In re Chevron Corp., 650 F.3d 276, 289 (3d Cir. 2011) (internal citations omitted).  As such, "the privilege is limited to confidential communications with an attorney acting in his professional capacity for the express purpose of securing legal advice."  Teltron, Inc. v. Alexander, 132 F.R.D. 394, 396 (E.D. Pa. 1990) (internal citations omitted).

## IV.   DISCUSSION

Plaintiffs argue that the three documents in question are not protected by attorney-client privilege because (1) there was no attorney-client relationship between Lt. Winterbottom, acting on behalf of the PSP, and the Office of Attorney General or the Chester County District Attorney, and (2) the communications were not made for the purpose of securing legal advice.  (Doc. No. 37-1 at 1.)

In the alternative, Plaintiffs assert that even if the documents were protected by the attorney-client privilege, the privilege was waived when the PSP produced the May 28, 2010

communication from Lt. Winterbottom to John Flannery, Esquire, of the Attorney General's Office. (Doc. No. 37 ¶ 11.) Plaintiffs argue that the disclosure of this letter or email resulted in a waiver of all prior communications between the PSP and the Office of Attorney General. (Doc. No. 37-1 at 6.) In response, Defendant Pawlowski maintains that Lt. Winterbottom communicated with counsel in both offices in their official capacity as attorneys representing the Commonwealth and the PSP and for the purpose of securing legal advice. (Doc. No. 42 at 6-8.)

For reasons that follow, the Court agrees with Defendant Pawlowski that these communications fall under the protection of the attorney-client privilege.[10]

A.          Attorney-Client Relationship

First and foremost, the attorney-client privilege applies only if an attorney-client relationship exists.[11] "'The privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer; the key is whether there has been a professional consultation with an attorney, who acts or advises as such.'" Constand v. Cosby, 232 F.R.D. 494, 502 (E.D. Pa.. 2006) (quoting Okum v. Pa. Unemployment Comp. Bd. of Review, 465 A.2d 1324, 1325 (Pa. Commw. Ct. 1983)). Communications between government attorneys, acting in their professional capacity as such, and client agencies and departments are protected by the

---

[10] The scope of the Court's analysis is limited to whether the requisite attorney-client relationship was formed and whether the communications were for the purpose of seeking legal advice. There is no dispute that the communications were made in confidence by Lt. Winterbottom with the expectation that they would remain protected from disclosure.

[11] "A 'client' is a person (including a public officer) or any kind of entity (including a corporation, governmental body, association, or other kind of organization), public or private, who is rendered professional legal services by a lawyer." 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.11 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) (internal footnotes omitted). "Governmental bodies are other organizations that can come within the definition of 'client.'" Id.

attorney-client privilege.  <u>See</u> 3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal</u> <u>Evidence</u> § 503.11 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997).

The District Attorney's "client" is the Commonwealth of Pennsylvania.  16 Pa. Stat. Ann. § 1402.  Additionally, the Attorney General represents the Commonwealth and all Commonwealth agencies. 71 Pa. Cons. Stat. Ann. § 732-204.[12]  Here, Lt. Winterbottom, as an employee for the PSP, was communicating with both the attorney John Flannery of the Attorney General's office and the District Attorney in their official capacity as attorneys representing the Commonwealth and the Pennsylvania State Police about an ongoing investigation.  Lt. Winterbottom and the PSP sought legal advice as a client of both lawyers.  As such, an attorney-client relationship existed between them.

Plaintiffs argue, however, that no attorney-client relationship was formed between the District Attorney and Lt. Winterbottom because it was the District Attorney, and not the "client" Lt. Winterbottom, who requested information concerning the investigation of Defendant Cruz. (Doc. No. 37-1 at 4.)  The Court is not persuaded by Plaintiffs' argument.

This claim was addressed by the Supreme Court in <u>Upjohn Co. v. United States</u>, 449 U.S. 383 (1981).  The Supreme Court stated that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice[,]" because "[a] lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of

---

[12]  Plaintiffs contend that Defendant failed to establish that an attorney-client relationship existed because the Attorney General was not acting as the PSP's attorney in this case.  (Doc. No. 37-1 at 5.)  Plaintiffs argue that the PSP is represented by its own Chief Counsel from whom it seeks and receives legal advice.  (<u>Id.</u> at 3.)

our legal system." Upjohn Co., 449 U.S. at 389-91 (internal citations omitted); see also In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977) (stating that the attorney-client privilege normally extends to the substance of the client's communication as well as the attorney's advice in response thereto).[13]

Consequently, Defendant Pawlowski has provided sufficient evidence that the requisite attorney-client relationship was established.

B.      Communications for Purpose of Seeking Legal Advice

Plaintiffs argue that the communications at issue were not made for the purpose of securing legal advice and therefore should not be protected from disclosure by the attorney-client privilege.  (Doc. No. 37-1 at 1.)

As discussed above, "the [attorney-client] privilege applies only to confidential communications made in connection with providing legal services."  Wise Invs., Inc. v. Bracy Contracting, Inc., No. 01-3458, 2002 WL 31955990, at *1 (E.D. Pa. Oct. 23, 2002).  The purpose of the consultation with a lawyer is a critical element in the privilege analysis.  See Montgomery Cnty. v. MicroVote Corp., 175 F.3d 296, 302 (3d Cir. 1999) ("the manner in which a person is hired and the resulting services that are performed are of the utmost significance in determining the capacity in which the person was engaged.").

In the instant case, the communications between Lt. Winterbottom and the Attorney General's Office and the District Attorney were for the purpose of seeking legal advice.  The

---

[13]   Recently, the Pennsylvania Supreme Court held that "the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011).

communications contain relevant information needed by the Attorney General to make an
informed decision on whether to prosecute Defendant Cruz for his conduct in the underlying
incident.  Additionally, these communications contain proposed legal advice made in anticipation
of potential litigation stemming from the alleged incident.  Further, the communications
explicitly discuss strategy and include discussions pertaining to defense counsel.

Where the party asserting the privilege has met the burden of demonstrating that
communications fall within the scope of the attorney-client privilege, these privileged
communications are "zealously protected."  See Klitzman, Klitzman & Gallagher v. Krut, 744
F.2d 955, 960 (3d Cir. 1984) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice
and Procedure § 2017 (1970)).  While the Court recognizes that the attorney-client privilege has a
narrow application, "[it] also accord[s] due weight to the countervailing concern for encouraging
full and frank communications between attorneys and their clients."  Wise Invs., Inc., 2002 WL
31955990, at *3 n.1.

Here, the Court finds that Defendant Pawlowski has established the communications at
issue were for the purpose of seeking legal advice.

C.    Waiver

Alternatively, Plaintiffs argue that even if the documents were protected by attorney-
client privilege, the privilege was waived when the PSP produced Lt. Winterbottom's subsequent
letter dated May 28, 2010 to the Attorney General's Office as an attachment to an IAD report
submitted to Plaintiffs' counsel.

This Court is not persuaded by the claim of waiver.  "When a party discloses a portion of
otherwise privileged materials while withholding the rest, the privilege is waived only as to those

communications actually disclosed, unless partial waiver would be unfair to the party's adversary." <u>Westinghouse Elec. Corp. v. Republic of Philippines</u>, 951 F.2d 1414, 1426 n.12 (3d Cir. 1991).

Under this authority, the disclosure of a subsequent correspondence between Lt. Winterbottom and the Office of the Attorney General did not waive the privilege as to the three remaining undisclosed communications.  Furthermore, the Court does not agree that the disclosure of the May 28, 2010 letter resulted in a waiver of all communications between the PSP and the Office of Attorney General.  Finally, there is no reason to believe that Plaintiffs would be unfairly disadvantaged by not receiving the three documents in question.

## V.     CONCLUSION

For the foregoing reasons, the Court finds that the three documents, marked as DP-2 in the record, are protected by attorney-client privilege.  The Court will deny Plaintiffs' Motion to Compel Production of Documents Pursuant to Rule 45(c)(2)(B)(i).  An appropriate Order follows.